**Entered on Docket**
**December 28, 2016**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**




**The following constitutes the order of the court. Signed December 27, 2016**

**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JEFFREY C. FARLEY,<br><br>Debtor. | Case No. 14-44336 CN<br>Chapter 13<br><br>**MEMORANDUM DECISION AFTER EVIDENTIARY HEARING** |

On December 12, 2016, the Court conducted an evidentiary hearing on Debtor's Motion for Sanctions for Violation of the Discharge Injunction (the "Motion"). Only Farley's counsel appeared at the hearing. Farley originally sought damages against R Wild Horse Ranch Association ("R Wild") and an entity known as Jefferson Judgment Recovery, which this court understands is a dba for Erik McCain (collectively, "McCain"). Farley settled his claims against R Wild, and the evidentiary hearing therefore addressed his remedies against McCain. During the hearing, Farley limited his evidence to damages and did not seek to prove the underlying discharge violation. Farley's counsel addressed this issue by requesting that the court admit into evidence the declarations submitted by Farley and R Wild during the preliminary stages of this contested matter. The court granted this request. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

Before Farley filed his Chapter 13 case, he and his wife Lora Farley[1] jointly owned an interest in R Wild, a non-residential common interests development in Tehama County that offers outdoor

[1] The Farleys were married at all relevant times herein.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

recreational activities. Owners pay R Wild an annual fee to maintain the real property. In February 2014, R Wild filed a small claims action against the Farleys for $2500 in unpaid assessments, and it obtained a $2,700 default judgment against them (the "Judgment"). Farley filed his Chapter 13 case on October 29, 2014 and included the Judgment in his (amended) bankruptcy schedules. Lora Farley did not join in Farley's Chapter 13 case.

On April 21, 2015, R-Wild assigned the Judgment to McCain for collection purposes. McCain holds himself out as an experienced debt collector. McCain thereafter attempted to garnish Lora Farley's wages as part of his debt collection strategy. Farley's counsel promptly informed McCain (by letter dated May 20, 2015) that his collection efforts violated the automatic stay and that he should immediately cease all attempts to collect the Judgment. McCain terminated the garnishment.

This court confirmed Farley's third amended Chapter 13 plan on September 9, 2015. The confirmed plan required that Farley sell his residence and use the proceeds (and three monthly plan payments) to complete his plan obligations. Farley made all of his plan payments by the end of September 2015. Farley received his discharge on November 10, 2015, and his Chapter 13 was closed on November 18, 2015. Since R Wild was a listed creditor, it received Farley's discharge order.

On March 1, 2016, McCain served an earnings withholding order on Danville Pediatric Dentistry, Lora Farley's employer. Lora Farley is paid bimonthly, and a total of $663.48 was garnished from two paychecks. Lora Farley was her family's sole wage earner at that time, and the garnishments significantly strained their budget. Both Farleys testified that the garnishments caused or exacerbated a wide assortment of physical ailments, including sleeplessness, fibromyalgia, and digestive problems, and greatly stressed their emotional well being. Jeffrey Farley noted that his mother, who had been living with them, thought it was better if she moved to live with his brother, and that he was forced to postpone surgery, which caused certain complications.

Farley informed his bankruptcy counsel about the March 1, 2016 garnishment, and on May 23, 2016, she faxed a letter to McCain informing him that Farley's Chapter 13 discharge enjoined him from collecting the Judgment against community income. McCain did not respond to counsel's



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 14-44336 Doc# 152 Filed: 12/27/16 Entered: 12/28/16 10:49:49 Page 2 of 7

letter, and on June 1, 2016, Farley's counsel filed and served the Motion against R Wild and McCain. The garnished wages were returned to Lora Farley on June 23, 2016. McCain did not file any pleading (or make any appearance) in response to the Motion, and Farley did not seek discovery from him. Accordingly, the only source of what McCain knew and when he knew it are the declarations and documents filed by R Wild and the Farleys.

McCain is a debt collector. The court does not know whether he has any other experience in collecting debts against individuals protected by a bankruptcy discharge. By late May 2015, McCain certainly knew that Farley had filed a Chapter 13 and that the automatic stay enjoined his collection efforts against Lora Farley's wages during the pendency of the bankruptcy case. The more significant question, however, revolves around his knowledge of the discharge injunction. McCain recommenced collection efforts in February 2016 and served the wage garnishment papers on Lora Farley's employer on March 1, 2016. There is scant evidence, however, that McCain understood at this time that Farley's discharge protected his wife's income. First, R Wild, and not McCain, received a copy of the discharge from the court. The discharge order is a form document issued by bankruptcy courts. The reverse side of the discharge order provides a concise description of its scope, and specifically notifies all recipients that the discharge protects community property and post-discharge community income. Second, R Wild immediately contacted McCain after it received the Motion in early June 2016. McCain informed R Wild that he had "screwed up" because he "did not understand the effect of the discharge injunction." McCain's notes support this statement.[2] These notes indicate that McCain conducted a PACER search on December 1, 2015 and learned that Farley had received his discharge. There is no evidence, however, that he actually read the discharge order. McCain's notes also indicate that he conducted a second PACER search on February 26, 2016 to confirm that Lora Farley had not filed her own bankruptcy.[3] Once confirmed, he promptly recommenced wage garnishment proceedings against her. McCain's notes and conduct thus

---

[2] McCain's notes are attached to one of R Wild's declarations.

[3] The lag between PACER searches is attributable to the statutory delay between successive wage garnishment orders under California law.



Case: 14-44336 Doc# 152 Filed: 12/27/16 Entered: 12/28/16 10:49:49 Page 3 of 7

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

demonstrate that as of March 1, 2016, McCain did not know that Farley's discharge injunction prevented him from garnishing Lora Farley's wages. May 23, 2016 is the pivotal date, since this is when McCain received the faxed letter from Farley's bankruptcy counsel instructing him to terminate the wage garnishment.

Had McCain promptly terminated his collection efforts on that date, this court would be hard pressed to hold him in contempt. McCain's notes indicate, however, that he continued to press Lora Farley's employer to comply with the wage garnishment order through June 8, 2016.

Bankruptcy Code § 524 creates a discharge injunction for debtors who receive, *inter alia*, a Chapter 13 discharge. Section 524(a)(3) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from . . . property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim . . . ." The Ninth Circuit Bankruptcy Appellate Panel has noted that "Regardless of whether the community claim was attributable to the actions of the debtor spouse, the nondebtor spouse, or both, the effect of § 524(a)(3) is that all community property acquired post-bankruptcy is protected by the discharge...In other words, the personal liability of a nondebtor spouse that survives the bankruptcy only can be enforced against property of the nondebtor spouse that is not community property." *In re Kimmel*, 378 B.R. 630, 635-36 (B.A.P. 9th Cir. 2007), *aff'd*, 302 F. App'x 518 (9th Cir. 2008). Community property is defined by § 760 of the California Family Code: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." In California, a spouse's wages are community property: "It is well settled that earnings of either the husband or the wife acquired during the marriage constitute community property." *State Bd. of Equalization v. Woo*, 82 Cal. App. 4th 481, 483, 98 Cal. Rptr. 2d 206, 208 (2000), as modified on denial of reh'g (Aug. 7, 2000).

The Judgment is an allowable community property claim, and Lora Farley's post-discharge wages were and are community property. The March 2016 wage garnishment therefore violated the discharge injunction.

Civil contempt is the appropriate remedy for discharge injunction violations. "Compensatory

civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002). The party seeking contempt must prove "by clear and convincing evidence that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction" (internal quotation marks omitted, citations omitted). *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006). Moreover,"the Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim. Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one." *In re Taggart*, 548 B.R. 275, 288 (B.A.P. 9th Cir. 2016).

The Farleys have demonstrated by clear and convincing evidence that this court should hold McCain in contempt and award attorney's fees and compensatory damages. *See In re Dyer*, 322 F.3d 1178 (9th Cir. 2003). While McCain may not have known on March 1, 2016 that the discharge injunction was applicable, he certainly knew by May 23, 2016.[4] Despite this, he continued to press Lora Farley's employer to comply with the statutory wage garnishment procedures. Second, it is

---

[4] It is important to note that the scope of the automatic stay is far broader than that of the discharge injunction. Given the high evidentiary standard that this court must apply and the limited evidentiary record before it, the court cannot find that McCain's experience with the automatic stay in this case necessarily means that he knew in February/March 2016 that the discharge order enjoined him from garnishing Lora Farley's wages.

Moreover, this court has not been asked to define the precise relationship between R Wild and McCain. Even if this court assumes that there was a principal-agent relationship between them and that R-Wild knew of the discharge injunction, R Wild's knowledge cannot be imputed to McCain. California Civil Code § 2332 provides that "*As against a principal*, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other" (emphasis added). While an agent's knowledge is imputed to the principal, the converse is not. "By its very terms, section 2332 speaks to imputation of knowledge "[a]s against a principal"; it says nothing about imputing a principal entity's knowledge to its agents... We find no principle in the law of agency to support a holding that an agent must be charged with knowledge of facts given to a principal business entity." *Godwin v. City of Bellflower*, 5 Cal. App. 4th 1625, 1631, 7 Cal. Rptr. 2d 524, 527 (1992).



Case: 14-44336 Doc# 152 Filed: 12/27/16 Entered: 12/28/16 10:49:49 Page 5 of 7

undisputed that McCain, who is a debt collector, intended to serve and pursue the wage garnishment.

Accordingly, McCain is held in contempt for violating the discharge injunction and is precluded from taking any further collection efforts that violate the discharge injunction. The court is also awarding the Farleys $15,000 in compensatory damages for their pain and suffering. Under California Civil Code § 3281, "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

Physical pain and emotional distress are compensable injuries. Damages for such injuries must be determined by "impartial conscience and judgment of jurors [or a judge] who may be expected to act reasonably, intelligently and in harmony with the evidence." *Capelouto v. Kaiser Foundation Hospitals*, 7 Cal.3d 889, 892-93, 103 Cal.Rptr. 856, 500 P.2d 880 (1972). Moreover, "For harm to body, feelings or reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded without proof of amount other than evidence of the nature of the harm. There is no direct correspondence between money and harm to the body, feelings or reputation. There is no market price for a scar or for loss of hearing since the damages are not measured by the amount for which one would be willing to suffer the harm. The discretion of the judge or jury determines the amount of the recovery, the only standard being such an amount a reasonable person would estimate as fair compensation." [citation omitted.] *Duarte v. Zachariah*, 22 Cal.App.4th 1652, 1664-65, 28 Cal.Rptr.2d 88 (1994). Given the financial distress and emotional and physical pain caused by McCain's discharge violation, $15,000 is an appropriate amount. Even though the initial shock was caused before the contemptible action, the Farleys' physical and emotional pain and financial distress continued past the May 23rd date and at least until the garnished wages were returned in late June 2016.

Finally, Farley is entitled to reasonable attorney's fees and costs. While his counsel has submitted two fee applications, her last application does not include her trial time nor reflect the fees paid by R Wild. Accordingly, Farley's counsel shall submit a complete fee application by no later January 13, 2017 for this court's review.

*** * * END OF ORDER * * ***



Case: 14-44336 Doc# 152 Filed: 12/27/16 Entered: 12/28/16 10:49:49 Page 6 of 7

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case No. 14-44336 CN

**COURT SERVICE LIST**

Jeffrey C. Farley
504 Zita Court
Danville, CA 94526

JJR
P.O. Box 124
Red Bluff, CA 96080

Jefferson Judgment Recovery (JJR)
20825 Stoll Road
Red Bluff, CA 96080

Erik McCain
P.O. Box 124
Red Bluff, CA 96080

Erik McCain
20825 Stoll Road
Red Bluff, Ca 96080

Other recipients are ECF participants